UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BULLSEYE EVENT GROUP LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02110-WTL-MJD |
| | ) | |
| MARRIOTT INTERNATIONAL, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO DISMISS**

This matter is before the Court on Defendants' *Motion to Dismiss Plaintiff's Amended Complaint*. [Dkt. 16.] On January 16, 2018, the parties consented to the jurisdiction of the Magistrate Judge for the purpose of ruling upon this motion. [Dkt. 48.] Pursuant to 28 U.S.C. § 636(c)(1), District Judge William T. Lawrence then referred the motion to the undersigned Magistrate Judge for ruling. [Dkt. 52.] For the reasons set forth below, the Court **DENIES** Defendants' motion.

### I. Background

The following facts are not necessarily objectively true. But as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all reasonable inferences in favor of Plaintiff as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

This is an action for fraud relating to the sale of Super Bowl and NBA All-Star tickets. Plaintiff, Bullseye Event Group LLC, is a ticket broker, owned and managed by Indiana residents Kyle and Lisa Kinnett. [Dkt. 13 at 1; ¶2-3.] On February 5, 2016, Kyle Kinnett

("Kinnett") received a telephone call from a man who identified himself as Dr. Douglas Schultz ("Dr. Schultz"). [Dkt. 13 at 3; ¶ 19.] Dr. Schultz told Kinnett he was a guest of the Ritz-Carlton San Francisco hotel (owned and operated by Defendants) and was interested in purchasing tickets to Super Bowl 50. [Dkt. 13 at 3; ¶20.] Dr. Schultz said Defendants' concierge, Daniel Rey ("Rey"), had given him Plaintiff's name and telephone number as a ticket source. *Id*.

Prior to processing the credit cards provided by Dr. Schultz for the sale, Kinnett called Rey to confirm the information Dr. Schultz had given to Kinnett on the phone. [Dkt. 13 at 4; ¶24.] During the conversation with Rey, Kinnett expressed apprehension about entering a ticket purchase with Dr. Shultz to which Rey responded: "Mr. Kinnett, you have nothing to worry about. I've seen Dr. Schultz with my own eyes. I've talked to Dr. Schultz in person. I've seen his I.D., and he's a registered guest staying with us in our hotel, so whatever concerns you have, don't worry about those." [Dkt. 13 at 4; ¶27.]

Plaintiff subsequently sold 20 Super Bowl 50 tickets to Dr. Schultz in three separate transactions for a total of $99,600.00. [Dkt. 13 at 6; ¶41.][1] The transactions occurred as follows:

- Six tickets on February 5, 2016, for a total of $24,000.00. The transaction was split between two credit cards. [Dkt. 13 at 5; ¶32.]

- Eight tickets on February 6, 2016, for a total of $45,600.00. The transaction was split between four credit cards. [Dkt. 13 at 5; ¶35.]

- Six tickets on February 7, 2016, for a total of $30,000.00. The transaction was split between three credit cards. [Dkt. 13 at 6; ¶40.]

Once the first transaction was processed and approved, Plaintiff packaged those tickets and delivered them to Rey at Defendants' hotel. [Dkt. 13 at 5; ¶29-30.] Dr. Schultz arranged for

---

[1] The Amended Complaint refers to "Plaintiff" and "Kinnett" interchangeably. The Court's recitation of the facts follows that in the Amended Complaint.

2

a courier to pick up the tickets from Plaintiff for the second two transactions. [Dkt. 13 at 5; ¶34 and ¶39.]

On February 13, 2016, Dr. Schultz contacted Plaintiff about purchasing tickets to the NBA All Star game. [Dkt. 13 at 6; ¶42.] Dr. Schultz said he would be staying at the Marriott Courtyard in Toronto and that Plaintiff could leave the tickets with Gregory Chisholm at the front desk. [Dkt. 13 at 6; ¶43.] Plaintiff contacted Mr. Chisholm, who stated that Dr. Schultz would be checking in on February 14 and that he (Mr. Chisholm) was aware Plaintiff would be delivering some tickets for Dr. Schultz. [Dkt. 13 at 7; ¶44.] Plaintiff sold 20 NBA All Star tickets to Dr. Schultz on February 13, 2016, for a total of $40,000.00. The transaction was split between four credit cards. [Dkt. 13 at 7; ¶45.]

On February 14, 2016, Plaintiff received a general inquiry on its website from Brooke Lewis ("Lewis") stating that there was an unauthorized charge for $7,000.00 on her credit card on February 5, 2016. [Dkt. 13 at 7; ¶47.] The unauthorized charge was traced back to a portion of the first transaction for Super Bowl 50 tickets purchased by Dr. Schultz. [Dkt. 13 at 8; ¶48.] After learning of the unauthorized charge to Lewis' credit card, Plaintiff notified Mr. Chisholm at the Marriott Courtyard and did not deliver the All Star tickets. Mr. Chisholm emailed Plaintiff later that evening and reported Dr. Schultz did not check in to the hotel. [Dkt. 13 at 8; ¶49.] Plaintiff was unable to secure another buyer for the 20 All Star tickets it had obtained for Dr. Schultz and ultimately resorted to selling them for "pennies on the dollar" just prior to the start of the game. [Dkt. 13 at 8; ¶50.]

On February 14, 2016, Kinnett called the Ritz-Carlton San Francisco and asked to speak with Rey. Kinnett was told it was Rey's day off and was connected to Angelo, the weekend manager. [Dkt. 13 at 8; ¶52.] Angelo at first confirmed Dr. Schultz was a registered guest the

3

weekend of Super Bowl 50. However, upon further investigation, Angelo determined Dr. Schultz never checked in to the hotel. *Id*. Plaintiff also discussed the matter with the hotel's General Manager, Bruce Gorelick, who advised Plaintiff that another ticket broker had refused to do business with Dr. Schultz. [Dkt. 13 at 9; ¶54.] Plaintiff ultimately received chargeback notifications for all of the credit cards used to process the transactions with Dr. Schultz for a total of $139,600.00. [Dkt. 13 at 10; ¶57.]

Plaintiff's action asserts claims of deceit and negligent misrepresentation against Defendants based upon Rey's alleged representations to Plaintiff concerning Dr. Schultz and Plaintiff's reliance thereupon. Defendants maintain they did not know about, did not participate in, and did not benefit from, the fraudulent scheme and seek dismissal of the action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the factual matter alleged in the complaint. *AnchorBank, FSB v. Hofer,* 649 F.3d 610, 614 (7th Cir. 2011). A plaintiff must do more than simply recite the elements of a claim and provide conclusory statements in support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The complaint must provide enough factual information to state a claim for relief that is plausible on its face and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, the court accepts all facts in the complaint as true, views them in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 463 (7th Cir. 2010).

4

When a plaintiff alleges fraud or mistake, Rule 9(b) requires that all such averments be stated with particularity. Particularity includes "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.,* 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1078 (7th Cir. 1997)). Plaintiff may, however, assert malice, intent, and knowledge in general terms. *Hefferman v. Bass,* 467 F.3d 596, 601 (7th Cir. 2006).

### III. Discussion

The Amended Complaint asserts two claims: deceit and negligent misrepresentation.[2] The Court will address each claim in turn below.

#### A. Deceit

Defendants argue Plaintiff's claim for deceit (fraud) should be dismissed because the Amended Complaint fails to allege any facts to support the element of intent to defraud, much less meet the heightened pleading standard of Rule 9(b). [Dkt. 17 at 5.] The elements of fraud, which gives rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage. *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 173 (Cal. 2003).

Rule 9(b) requires that the "circumstances constituting the fraud" be stated with particularity. Fed. R. Civ. P. 9(b). The plaintiff must allege "the who, what, when, where, and

---

[2] The parties agree the substantive law of California applies to this action as the state where the alleged torts occurred. California law uses the terms "fraud" and "deceit" interchangeably. *State ex rel Wilson v. Superior Court,* 227 Cal.App.4th 579, 600 (Cal. Ct. App. 2014).

5

how" of the alleged fraudulent conduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). In other words, the plaintiff must describe the alleged fraud in specific enough terms "to give defendants notice of the particular misconduct so that they can defend against the charge." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Here, Plaintiff has alleged the following scenario: Defendants' employee Mr. Rey put Dr. Schultz in touch with Plaintiff. [Dkt. 13 at 3; ¶20.] Mr. Rey told Plaintiff "not to worry" about Dr. Schultz, that Dr. Schultz was a guest of the hotel, and encouraged Plaintiff to sell him the tickets. [Dkt. 13 at 4-5; ¶¶27-28.] Defendants reassured Plaintiff despite the knowledge that another ticket broker had previously refused to do business with Dr. Schultz. [Dkt. 13 at 9; ¶54.] Defendants represented that Dr. Schultz was a guest of the hotel knowing that representation was false and/or with reckless disregard for the truth. [Dkt. 13 at 11; ¶61.] Mr. Rey (acting within the scope of his employment with Defendants) intended for Plaintiff to rely upon his representations concerning Dr. Schultz. [Dkt. 13 at 11; ¶62.] Plaintiff would not have conducted business with Dr. Schultz in the absence of Defendants' representations. [Dkt. 13 at 11; ¶64.]

The Court's focus at this stage of the litigation is whether the claims satisfy the federal pleading standards, including giving enough description of the alleged fraud to allow Defendants to defend against the charge. Contrary to Defendants' assertions, Plaintiff has accomplished that with the Amended Complaint. Rule 9(B) requires the circumstances around the alleged fraud to be pleaded with particularity, however "malice, intent, and knowledge" may be asserted in general terms. Fed. R. Civ. P. 9(b). The allegations here are sufficient to provide Defendants with "fair notice" of Plaintiff's claims. *Twombly*, 550 U.S. at 555. Plaintiff identified its claims and the factual scenario upon which they are based. The Court finds these allegations contain more than "[t]hreadbare recitals of the elements," *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct.

6

1937, 173 L.Ed.2d 868 (2009), and allege facts sufficient to raise a plausible claim of fraud. Whether there is evidence to support these allegations is a question for another day, but the allegations themselves are sufficient to survive a motion to dismiss.

### B. Negligent Misrepresentation

Defendants seek the dismissal of Plaintiff's negligent misrepresentation claim because Plaintiff is unable to establish Defendants owed it a duty of care and Plaintiff's reliance upon Rey's alleged representations was not justified. [Dkt. 17 at 7 and 11.] This may very well be true. However, these arguments reach beyond the sufficiency of the pleadings, which is the proper scope of a motion to dismiss. California courts recognize a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information, where information is conveyed in a commercial setting for a business purpose. *Friedman v. Merck & Co.* 107 Cal. App. 4th 454, 477 (Cal. 2003). That is the scenario Plaintiff plausibly alleges in the Amended Complaint.

The elements of a cause of action for negligent misrepresentation are very similar to those for fraud; however, the state of mind requirements are different. Negligent misrepresentation lacks the element of intent to deceive. Therefore, "[w]here the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." *Intrieri v. Superior Court*, 117 Cal. App. 4th 72 at 85–86 (Cal. Ct. App. 2004) (internal citations omitted). To state a claim for negligent misrepresentation, Plaintiff must allege: (1) misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the misrepresentation, (4) ignorance of the truth and

justifiable reliance on the misrepresentation by the party to whom it was directed, and (5) resulting damage. *Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 997 (N.D. Cal. 2010).

Plaintiff has alleged that Defendants (via Rey) assured Plaintiff that Dr. Schultz was a guest of the Ritz-Carlton and that Rey had seen and spoken to Dr. Schultz in person. [Dkt. 13 at 4; ¶27-28.] When Kinnett later inquired about the credit card Dr. Schultz used to pay for the room, another concierge determined Dr. Schultz had never actually checked in to the hotel. [Dkt. 13 at 8; ¶52-53.] Plaintiff further alleged that Defendants have a pecuniary interest in accommodating their guests or future guests and made the representations to Plaintiff without reasonable grounds for believing they were true. [Dkt. 13 at 12; ¶70-72.] Plaintiff relied upon Defendants' representations in doing business with Dr. Schultz and suffered economic injury as a result. [Dkt. 13 at 12; ¶73-76.] These allegations give fair notice to Defendants as to Plaintiff's claim for negligent misrepresentation.

Whether these allegations are supported by evidence and raise a genuine issue of material fact for trial, or whether Plaintiff will ultimately prevail in the action, are separate questions not properly decided under the procedural vehicle of a Rule 12(b)(6) motion to dismiss. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 618 (7th Cir. 2011). The Amended Complaint alleges a plausible claim for negligent misrepresentation by Defendants.

### IV.  Conclusion

Based on the foregoing, Defendants' *Motion to Dismiss Plaintiff's Amended Complaint* [Dkt. 16] is **DENIED**.

Dated:  30 JAN 2018

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

S. Andrew Burns
COX SARGEANT & BURNS PC
aburns@coxsargelaw.com

Manuel Herceg
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mherceg@taftlaw.com

Jonathan S. Jacobs
AEGIS LAW GROUP LLP
jjacobs@aegislawgroup.com