UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BULLSEYE EVENT GROUP LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-02110-JRS-MJD ) |
| MARRIOTT INTERNATIONAL, INC., THE RITZ-CARLTON HOTEL COMPANY L.L.C., | ) ) ) ) ) |
| Defendants. | ) |

**Order Granting Summary Judgment (ECF No. 69)**

This matter is before the Court pursuant to its diversity jurisdiction. Plaintiff is an Indiana citizen (ECF No. 11 ¶ 3(a)), Defendants are each a citizen of both Delaware and Maryland (*id.* ¶ 3(b)-(c)), and the amount in controversy exceeds $75,000, exclusive of interests and costs (2d Am. Compl. ¶ 65, ECF No. 55). *See* 18 U.S.C. § 1332. Defendants' Motion for Summary Judgment (ECF No. 69) is fully briefed and ripe for decision. Having considered the motion, response, reply, evidence, and applicable law, the Court concludes that the motion should be GRANTED for the following reasons.

A man purporting to be "Dr. Douglas Schultz," a Beverly Hills cardiologist, charged $99,600 to six different credit cards over three separate transactions to purchase Super Bowl tickets from Plaintiff Bullseye Event Group LLC ("Plaintiff" or "Bullseye"), a ticket broker. (L. Kinnett Dec. ¶ 6, ex. D-1, ECF No. 81-5 at 2–4; 2d Am. Compl. ¶ 48.) Bullseye does not ordinarily sell tickets over the phone, especially

1

to a new customer on such a large scale. (K. Kinnett Dep. Tr. 103:2–8, [ECF No. 81-2 at 13](#).) But Schultz had a reservation at The Ritz-Carlton San Francisco, indicating to Bullseye's president that Schultz was "a qualified buyer." (Nichols Dep. Tr. 34:4–35:16, [ECF No. 81-3 at 5](#); K. Kinnett Dep. Tr. 169:5–170:9, [ECF No. 81-2 at 21](#).)

To process a credit card order, Bullseye typically requires, *inter alia*, images of the credit card and of the customer's photo identification. (Pl.'s Interrog. Answers at 4–5, [ECF No. 70-5](#) at 5–6.) Nevertheless, Bullseye took Schultz's orders over the phone, requiring neither images of the credit cards nor an image of Schultz's identification. Instead, Bullseye's president, Kyle Kinnett, verified with a concierge at The Ritz-Carlton that Schultz was a "registered guest" of the hotel and that the concierge had seen Schultz and Schultz's identification. The concierge assured Kinnett there was "nothing to worry about." (Pl.'s Mem. at 5, [ECF No. 81](#).) Once the credit card transactions were processed, Bullseye delivered the tickets to the concierge for Schultz.

One week later, Schultz charged $43,000 to four different credit cards—for a grand total of nine different credit cards among the relevant transactions—to purchase tickets to the NBA All-Star Game from Bullseye. (L. Kinnett Dec. ¶ 6, ex. D-1, [ECF No. 81-5](#) at 2–4; K. Kinnett Dep. Tr. 181:25–182:13, [ECF No. 81-2 at 8](#).) Schultz told Bullseye he was staying at the Courtyard Marriott in Toronto, and a hotel employee confirmed that Schultz had a reservation but had not checked in. (Nichols Dep. Tr. 34:8–12.) Schultz never picked up the tickets, and all of Bullseye's transactions with Schultz ultimately resulted in chargebacks—for the total amount of the transactions—from the various credit card companies.

2

Plaintiff alleges California state-law claims against Defendant The Ritz-Carlton Hotel Company, L.L.C. and its parent, Defendant Marriott International, Inc., for deceit and negligent misrepresentation. (2d Am. Compl. ¶¶ 69–88, ECF No. 55 at 12–15.) The parties agree that California substantive law applies to this diversity case. (ECF No. 53 at 5 n.2.) To prevail on either claim, Plaintiff must prove that it justifiably relied on Defendants' representations. *See Small v. Fritz Companies, Inc.*, 65 P.3d 1255, 1258 (Cal. 2003) (deceit); *Nat'l Union Fire. Ins. Co. v. Cambridge Integrated Servs. Grp.*, 89 Cal. Rptr. 3d 473, 483 (Cal. Ct. App. 2009) (negligent misrepresentation). Whether a plaintiff's reliance was justifiable is ordinarily a question of fact unless "reasonable minds can come to only one conclusion based on the facts." *Guido v. Koopman*, 2 Cal. Rptr. 2d 437, 440 (Cal. Ct. App. 1991). Defendants argue that Plaintiff's claims fail for lack of justifiable reliance. (Defs.' Mem. at 6, ECF No. 70.) Plaintiff responds that "Defendants' concierge's own, affirmative representations would have led any reasonable merchant to conclude that Schultz's credit cards were valid and issued in his name and that Schultz was a viable buyer." (Pl.'s Mem. at 20, ECF No. 81.)

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). All justifiable inferences to be drawn from the underlying

facts must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be granted. *Id*.

Plaintiff contends that Defendants' concierge misrepresented to Plaintiff that he had seen Schultz "with his own eyes," that he had seen Schultz's identification, that Schultz was a "registered guest" at The Ritz-Carlton, and that Plaintiff had "nothing to worry about." (Pl.'s Mem. at 4–5, ECF No. 81.) "Reliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material," and the matter is material if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." Restatement (Second) of Torts § 538 (1977). Bullseye could not have justifiably relied on the alleged misrepresentations of fact—that the concierge had seen Schultz and his identification and that Schultz was a registered guest of the hotel—because they are not material in the absence of another fact: that the credit cards used to make the purchases were issued to a Dr. Douglas Schultz. Plaintiff offers no evidence—nor even any allegation—that the concierge represented that the various credit cards used by Schultz bore his name. Nor did Plaintiff itself undertake to determine whether they did. (*See* L. Kinnett Dec. ¶ 7, ECF No. 81-5 at 2; Pl.'s Interrog. Answers at 4–5, ECF No. 70-5 at 5–6.) That a person has been seen by a concierge,

has an identification, and has a hotel reservation—even at a particularly lavish hotel—does not, in isolation, materially support an inference that the person will not transact business with stolen credit cards.

Bullseye likewise could not have justifiably relied upon the concierge's assurance that Bullseye had "nothing to worry about." "In determining whether one can reasonably or justifiably rely on an alleged misrepresentation, the knowledge, education, and experience of the person claiming reliance must be considered." *Guido*, 2 Cal. Rptr. 2d at 440–41. "If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied recovery." *Kruse v. Bank of Am.*, 248 Cal. Rptr. 217, 226 (Cal. Ct. App. 1988) (quoting *Seeger v. Odell*, 115 P.2d 977 (Cal. 1941)). In *Guido*, a horseback riding student—who was also a practicing attorney—signed a release after the instructor told her the release was "meaningless." 2 Cal. Rptr. 2d at 440. The attorney-student testified that she used releases in her law practice, and the court thus held that her reliance on the instructor's description of the release was not justifiable. *Id.* at 440–41. In *Gagne v. Bertran*, 275 P.2d 15, 21 (Cal. 1954), by contrast, the court held that the plaintiffs justifiably relied on the defendant's statement that they had "nothing to worry about" because the defendant "held himself out as an expert, the plaintiffs hired him to supply information concerning matters of which they were ignorant, and his unequivocal statement necessarily implied that he knew facts that justified his statement."

Here, Bullseye is a sophisticated business with extensive experience in credit card transactions. Kyle Kinnett, Bullseye's founder, co-owner, and president, has been a

5

ticket broker since 1992. (K. Kinnett Dep. Tr. 6:4–24; 8:23–9:7, ECF No. 70-2 at 6–8.) The "vast majority of all Super Bowl ticket transactions for Bullseye are processed via credit card." (L. Kinnett Dec. ¶ 4, ECF No. 81-5.) Indeed, for a single event—its Super Bowl party—Bullseye sells a thousand tickets online annually. (K. Kinnett Dep. Tr. 81:15–19, ECF No. 81-2 at 11.) Naturally, given the volume of Bullseye's credit card transactions, chargebacks are a "cost of doing business," but Bullseye takes "any measure [it] can" to prevent fraud. (K. Kinnett Dep. Tr. 82:9–15, ECF No. 81-2 at 11.) Its IT Director educates himself "anytime there's seminars or products out there" on fraud prevention. (K. Kinnett Dep. Tr. 82:16–18, ECF No. 81-2 at 11.)

Like the attorney in *Guido*, Bullseye's extensive experience in credit card transactions and fraud prevention precludes Bullseye from justifiably relying on a hotel concierge's say-so to process $140,000 in credit card transactions over the phone. Hotel concierges are not bankers, credit rating agencies, or private investigators; they do not ordinarily possess any special knowledge of a guest's proclivity for fraud. Hence, unlike the defendant in *Gagne*, the concierge was not an expert, Bullseye did not hire him, and—given Bullseye's experience in credit card transactions—Bullseye did not rely on him to "supply information concerning matters of which [it was] *ignorant*." 275 P.2d at 21 (emphasis added).

In short, because Bullseye's conduct "in the light of [its] own intelligence and information was manifestly unreasonable," *Kruse*, 248 Cal. Rptr. at 226, Bullseye's

claims miss the mark as a matter of law. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 69) is GRANTED, and Plaintiff's claims are DISMISSED on the merits with prejudice. A Final Judgment will be entered separately.

SO ORDERED.

Date: 1/11/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

S. Andrew Burns
COX SARGEANT & BURNS PC
aburns@coxsargelaw.com

Manuel Herceg
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mherceg@taftlaw.com

Jonathan S. Jacobs
AEGIS LAW GROUP LLP
jjacobs@aegislawgroup.com

Michael K. Ross
AEGIS LAW GROUP LLP
mross@aegislawgroup.com